W. M. DINWIDDIE, Adm'r, *v.* LOUISVILLE & NASHVILLE
RAILROAD COMPANY.

1. SUPREME COURT PRACTICE. *Bill of exceptions.* An affidavit that there
   was not kept by the clerk a jury and non-jury docket cannot be looked
   to. It should appear from the statement of the presiding judge as a
   part of the bill of exceptions.

2. RAILROADS. *Statutory regulations.* The statute requires, when obstruc-
   tions appear upon the road, that the *alarm* whistle should be sounded
   but does not specify the number or character of whistles, and the
   question is reserved whether if an engineer sounded for brakes, that
   would be a compliance with the statute.

3. SAME. *Same.* The statute does not specify the number of brakesmen
   there shall be upon the train. This is a regulation left to the rail-
   road company, which must be reasonable and in conformity with
   general usage and the course of business of railroads. To require one
   brakesman to each car is unreasonable.

FROM HENRY.

Appeal in error from the Circuit Court of Henry
county.    C. ADEN, J.

J. N. THOMASON for Dinwiddie.

COLE & SWEENEY for Railroad Company.

McFARLAND, J., delivered the opinion of the court.

This action was brought by the administrator of
Felix R. Hagler, deceased, for the use of his next of
kin, to recover damages for injuries by the railroad

company causing Hagler's death. The cause was tried by the judge without a jury, and the issue upon the plea of not guilty found in favor of the defendant, and judgment rendered accordingly. The plaintiff moved for a new trial, which was refused. He thereupon took a bill of exceptions, setting forth the evidence heard upon the trial and appealed in error.

The first ground of error assigned is the action of the court in trying the cause without a jury. The plaintiff's declaration was filed the 28th of May, 1879, and his replication to the defendant's plea on the 3d of June thereafter, and neither contains any demand for a jury. This, according to the terms of the act of 1875—which we have held to be a valid and constitutional regulation of jury trials—was a waiver of the right to a trial by a jury. It is argued, however, that the statute should not have been enforced in this case, for the reason that its requirements in regard to keeping a "jury docket" and a "non-jury docket" had not been complied with by the clerk.

If, however, this would affect the question—as clearly it would not—there is nothing in the record to show the facts assumed. The fact, it is true, is stated in an affidavit copied into the transcript, but the affidavit is not made part of the record by bill of exceptions, and cannot be looked to. Besides, a matter of this sort, when material, should appear from the statement of the presiding judge as part of the bill of exceptions.

We have several times held that we will not look to the affidavits of the parties in regard to facts transpiring in the presence of the court and as part of its

proceedings, of which the judge may be supposed to be cognizant, unless the bill of exceptions indicates that the judge really intended to certify the facts stated in the affidavit.

All that appears of record on this question, is the plaintiff's motion to transfer the cause to the jury docket, which was entered and refused on the 1st of May, 1880. There is in fact nothing to show that when the cause was tried on the 8th of June, 1880, a jury was demanded.

The next assignment of error is the action of the judge in sustaining the defendant's objection to a question asked by plaintiff's counsel of one of its witnesses to this effect; immediately after Hagler had been run over the train was stopped and the engineer, conductor and other train hands had gathered around the body which was still breathing; the witness was asked, "what statements were made around the body by the operatives of the train as to how the killing occurred." We think it requires neither argument nor authority to show that there is no error in this. It is not shown what statement the plaintiff proposed to prove, and besides it would have been but the declarations of persons not parties to the cause, as to facts which they were competent witnesses to prove, but as to which they could make no admission binding on the defendant.

It is next insisted that the finding of the trial judge is not sustained by the evidence. The fact that Hagler was run over and killed by defendant's train, was not denied. The proof indicates that he was drunk

and had fallen or lain down upon the track at a late
hour in the night and was probably asleep, and in
this condition was run over and killed. The finding
for the defendant was no doubt upon the ground that
the agents and employees of the road had complied
with all the requirements of the Code, sec. 1166, which
in such cases exonerates the company. It is insisted
that the proof fails to show a compliance with the
statute in this; the act requires a look-out ahead to
be constantly kept * * "and when any person, animal
or other obstruction appears upon the road, the *alarm
whistle* shall be sounded, the brakes put down, and
every possible means employed to stop the train and
prevent an accident." It is argued that the proof
shows that when an obstruction is discovered upon the
road, the engineer sounds what is styled a "call for
brakes," being either one, two or three short *whistles*,
according to the imminence of the danger; and in
addition he sounds what is called the "alarm whistle,"
a series of successive whistles, to alarm or frighten off
stock, and the latter duty was not performed in this
case, that the engineer only sounded the call for brakes.
The statute does not specify the number or character
of the whistles; it only says, the "alarm whistle."
The call for brakes is, according to the proof, an
"alarm whistle." But we need not in this case de-
termine what would be a compliance with the statute
in this respect, for the reason that there is proof
showing that the engineer "sounded the alarm *and*
called for brakes"—in the language of one witness,
"sounded the alarm *and* called for brakes violently."

So that even upon the assumption contended for, that the "alarm whistle" means a whistle distinct from a call for brakes, there is proof in the record that the statute was complied with.    We need not determine the weight of proof on the question—it is sufficient that there is proof to sustain the verdict.

It is next insisted that the statute was not complied with in regard to brakes; that the train was composed of six freight cars with brakes upon each car, butthat there were only three brakesmen, whereas with a brakesman upon each car the train could have been stopped sooner.    The proof is that there was the usual number, and considered sufficient for any train. The statute does not specify the number of brakesmen, and we are of opinion that this is one of the regulations that must be left to the railroad companies, provided their regulations are reasonable and in conformity with the general usage and course of business of railroads, and are such as contemplate a compliance with the statute according to its fair import and meaning.    To require one brakesman to each car, would be so contrary to all usage in this respect, and so unreasonable in itself, as to make it reasonably certain that the legislature did not intend to impose any such requirement.

There is no error in the record, and the judgment will be affirmed.